UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| UNITED STATES OF AMERICA | : | Case No. 1:16-cr-00154-NLH |
|---|---|---|
| Plaintiff, | : | |
|  | : | MOTION FOR RELIEF FROM |
| v. | : | ERISA SECTION 411 DEBARMENT |
|  | : | |
| JOSHUA GAYL | : | |
|  | : | Judge: Hon. Noel L. Hillman |
| Defendant. | : | |

## JOSHUA GAYL'S MEMORANDUM OF LAW IN SUPPORT OF MOTION FOR RELIEF FROM ERISA SECTION 411 DEBARMENT

### I.   INTRODUCTION

Movant Joshua Gayl seeks relief from a civil debarment that prevents Mr. Gayl from accepting a job offer that will provide him with an opportunity to use his skills and education and enable him to move his young family's financial footing from precarious to secure:

- Mr. Gayl has been offered a position in a firm with an ERISA component;

- because of Mr. Gayl's conviction, ERISA Section 411 bars him from accepting this position;

- this Court is able to exempt Mr. Gayl from the 411 bar if it finds that he meets all the statutory factors enumerated in 29 U.S.C. § 1111(a), and as described more fully *infra* at pages 6-10.[1]

---

[1] In anticipation of filing this motion, undersigned counsel notified the New Jersey United States Attorneys' Office to determine their position. As a result, a preliminary investigation was conducted by the Department of Labor, who preliminarily advised the USAO that DOL would oppose this motion because the original offense included dishonesty, not enough time had elapsed since the release from imprisonment, Mr. Gayl had no relevant ERISA experience, and he would be involved in the processing of claims.

## II.     STATEMENT OF FACTS

Defendant pled guilty to an Information for a violation of 18 U.S.C. § 371, Conspiracy to Obstruct Justice, on March 23, 2016.  Defendant was sentenced by this Court on July 19, 2017 to a sentence of 12 months and one day imprisonment, a $5,000.00 fine and a $100.00 special assessment, followed by a three year term of supervised release and other special conditions set forth in the Judgment of Conviction, attached hereto as Exhibit "H".[2]

At sentencing, this Court commended Defendant's efforts at pre-sentencing rehabilitation, including participating in neuropsychological therapy, family and individual counseling, as well as attending weekly Gamblers Anonymous meetings, his open discussions with family, friends and colleagues about acknowledging and addressing his issues, and for his work ethic and good relationship with colleagues and clients at the law firm where he began work as a law clerk in February 2016.  This Court granted a five-level variance from the sentencing guideline range of 27 to 33 months imprisonment and concluded:

> I believe that Mr. Gayl has had difficulties, that part of this is explained by getting in over his head and not having the capacity to deal with it in a healthy way.  I'm convinced that he's made an effort at rehabilitation.  I'm convinced that he has and has the prospect of being an engaged member of his community and adding value to those who would benefit from his wisdom and energy. I believe he has overwhelming family support and they are here today and that there's a low risk of recidivism.  And I believe that the collateral consequences that he and other members of his family will suffer will be a strong deterrent to any future criminal conduct.

Sentencing Transcript, pp. 109-110, attached hereto as Exhibit "I".

---

[2] Exhibits A through G are attached to the accompanying Affidavit of Joshua Gayl, Esq.

Mr. Gayl immediately paid his $5,000.00 fine and $100.00 assessment and owes no further financial obligation resulting from his offense. Receipts of payment of fine and assessment are attached to Defendant's Affidavit as Exhibit "A".

Mr. Gayl self-surrendered on August 29, 2017 to the Fort Dix Satellite Camp Prison, where he engaged in several rehabilitative efforts. Mr. Gayl was furloughed to home confinement on June 7, 2018 and was released from Board of Prisons custody on good behavior on July 12, 2018. Mr. Gayl's supervised release began on July 12, 2018 and was transferred from the District of New Jersey to the Eastern District of Pennsylvania, where Mr. Gayl lives and works. Mr. Gayl is classified by the United States Probation Office at the lowest level of supervision and follows all of the terms of his supervised release. Mr. Gayl has had no further incidents or interaction with law enforcement of any kind.

Mr. Gayl resides with his wife, Marsha and their two young children Ava, 8 and James, 5. Mr. Gayl has been continuously employed since June 13, 2018 as a law clerk with the same law firm in Philadelphia where he worked from February 16, 2016 until his surrender date, and is continuing to demonstrate his work ethic and rehabilitation. *See* Affidavit Exhibit "B", June 13, 2020 letter from John A. Lord, Esquire, an attorney at the firm where Mr. Gayl works, who has encouraged Mr. Gayl to seek more fulfilling professional opportunities and is the only member of the firm with knowledge of Mr. Gayl's conditional job offer:

> Upon his release, Josh was welcomed back to the firm and has spent the significant majority of his time working with me on the firm's most complex and valuable litigation files. While continuing to demonstrate humility and acceptance of responsibility for the situation in which he placed himself, and his family, his work has been superlative. Josh comports himself in a completely professional and competent manner.

Mr. Gayl has received similar praise from other colleagues as well, including attorneys who rent office space at the firm. *See id.*, June 14, 2020 letter from Mary Maran, Esquire.

> He returned humble, deeply self-reflective, solicitous of the resource around him, and generous with his willingness to share the story of his downfall and his determination to rise. In a world where there is less and less that commands respect, Josh has earned the collective respect of this suite of lawyers.

Since his release, Mr. Gayl has returned to treatment with his neuropsychologist and has demonstrated objective and subjective rehabilitation in therapy and testing. *See* Affidavit Exhibit "C", March 17, 2020 letter from Dr. Robert Rider:

> [H]e shows significant improvement since his initial evaluation in 2016 and since he resumed therapy after release from prison in 2018 in terms of mood and decision making. Mr. Gayl also continues to show a commitment to self-improvement and has been diligent about attending therapy. While he has reported continued regret for his past behavior, I have been impressed with the degree to which he aims to learn from his past mistakes. He also remains an active participant in Gamblers Anonymous meetings which have been an important source of support for his continued abstinence from gambling. Clinically, he is functioning well from both a cognitive and psychological perspective and there do not appear to be any significant psychosocial problems or mental health concerns at present.

Mr. Gayl also resumed his role as a leader at his weekly Gamblers' Anonymous Meetings. *See* Affidavit Exhibit "D", March 17, 2020 letter from Brad S.:

> Josh has come out a changed man. Not only has Josh resumed his regular routine of attending meetings every Thursday night but he is able to share about how far he fell in this addiction and what he is doing in his daily life to recover. That is a big part of our GA rooms and by sharing his story he is able to help others who maybe haven't hit their rock bottom yet and prevent them from going down the same path. Josh is a positive influence and true leader in the room…

In addition, Mr. Gayl recently received the honor of being nominated and elected to his synagogue's Board of Directors. *See* Affidavit Exhibit "E", June 15, 2020 letter from Michael Drossner, Esquire:

> I was privileged to recently nominate Josh to a position on our Board of Directors. While I did share the circumstances of Josh's conviction with the other members of the nominating committee and executive team, they all valued Josh's commitment to his family and our community…

*See id.*, June 14, 2020 letter from Rabbi Saul Grife:

> Since Josh's return from his incarceration, I have been impressed with his efforts to rebuild his family bonds and to strengthen the connections with his community, including our congregation. Both of his children have attended our pre-school program, where Josh has volunteered as a room parent and is active in the parent support group. Josh is also an active member of the congregation's Men's Club. …. He earned the trust of our community, and I was so happy for him and his family when he was recently elected to the synagogue's Board of Directors.

Mr. Gayl has similarly earned the respect and trust of members of his community. *See id.*, June 14, 2020 letter from Dan Livney, Psy.D.:

> Since his release I have watched him work very hard to strengthen relationships strained and put on hold by his incarceration. Although I cannot speak directly to his qualifications for the position, I am aware of how much his profession means to him. If what I see as his efforts towards responsibility and improvement in his personal life are a reflection of his attitudes towards this position, then I would venture that the company would benefit by his employment.

*See id.*, June 14, 2020 letter from Rebecca McClellan:

> Josh shows great remorse for his prior actions at VO Financial and proactively continues to rehabilitate himself. He makes sincere efforts to build relationships in our community and surrounds himself with good people. Josh has established a strong support network and can count on me, as I can count on him.

*See id.*, June 14, 2020 letter from Amy Wine:

> Josh has demonstrated a renewed commitment to living a life of honesty and integrity. . . .He has been open about his journey, sharing insights about

5

> his past mistakes and compulsive patterns of behavior that were harmful to himself and others.  He put his recovery to real practice. . . . Josh has shown genuine self-awareness in his rehabilitation, and I believe this strong protective factor will guide him in his professional life moving forward.

Mr. Gayl demonstrated rehabilitation sufficient to meet the high standards for reinstatement as a practicing attorney in the State of New Jersey.  *See* Affidavit Exhibit "F", April 23, 2020 Order of the Supreme Court of New Jersey; *see also* N.J. Rules of Disciplinary Enforcement 1:20-21(f), (l) and (m) (*i.e.*, the petitioner in reinstatement proceedings has the burden of proof to establish fitness to practice law by clear and convincing evidence).[3]

Turning specifically to the debarment issue, Mr. Gayl was recently offered a position as Associate Director of Claim Watcher Services, a subsidiary of Homestead Smart Health Plans, by William Green, III, a licensed attorney and former Philadelphia city councilman who serves as Homestead's Chief Executive Officer.[4]  *See* Affidavit Exhibit 'G", June 14, 2020 letter from William J. Green and job description:

> We would not be considering Mr. Gayl for this position if we did not believe that he is rehabilitated and has shown remorse and contrition for his previous actions.  I am confident that Mr. Gayl would be a tremendous asset to our organization.

Mr. Gayl's acceptance of this position is barred by 29 U.S.C. § 1111(a) unless this Court grants the requested Exemption.

---

[3] Mr. Gayl is also making progress toward a reinstatement application in Pennsylvania, where he was disbarred on consent, retroactive to June 3, 2016.

[4] "Claim Watcher" is a division of Homestead that uses a proprietary platform to audit and reprice medical claims and keep reimbursement rates as competitive as possible for employee benefit plans and their beneficiaries.

6

### III. THIS COURT SHOULD GRANT MR. GAYL AN EXEMPTION FROM THE ERISA DEBARMENT AS HE HAS AMPLY DEMONSTRATED THAT HE MEETS THE STANDARD SET FORTH BY THE DEPARTMENT OF LABOR.

For the past seven years, Mr. Gayl has worked diligently to rise above his misconduct and continue the positive, hard-working and honest path that he had fallen from when he became entangled in the scheme that led to his guilty plea. As a result of Mr. Gayl's efforts, he is now able to move his career forward in a way that uses his abilities and reflects his integrity. However, because Homestead's business includes an ERISA component, in that it provides services to employee benefit plans, Mr. Gayl is barred from accepting this offer by 29 U.S.C. § 1111(a), the ERISA debarment statute. This statute states, in pertinent part:

> No person who has been convicted of … [a variety of offenses, including a Federal felony violation of obstruction of justice] … shall serve or be permitted to serve—
>
> (1) as an administrator, fiduciary, officer, trustee, custodian, counsel, agent, employee, or representative in any capacity of any employee benefit plan,
> (2) as a consultant or adviser to an employee benefit plan, including but not limited to any entity whose activities are in whole or substantial part devoted to providing goods or services to any employee benefit plan, or
> (3) in any capacity that involves decisionmaking authority or custody or control of the moneys, funds, assets, or property of any employee benefit plan,
>
> during or for the period of thirteen years after such conviction or after the end of such imprisonment, whichever is later, . . . unless the sentencing court on the motion of the person convicted …pursuant to sentencing guidelines and policy statements under section 994(a) of title 28, United States Code, determines that such person's service in any capacity referred to in paragraphs (1) through (3) would not be contrary to the purposes of this subchapter.

Mr. Gayl satisfies the standards set forth for an exemption in this statute. Within the Department of Labor, the Employee Benefits Security Administration ("EBSA") is charged with investigating requests for exemptions under the statute. EBSA's Enforcement Manual for Prohibited Persons is publicly available and details the

7

exemption procedures.[5] In pertinent part, Footnote 1 of the Enforcement Manual describes the exemption requirement that the Federal Judge determine: 1) the prohibited person's service would not be contrary to the purposes of Title I of ERISA; 2) in accordance with the sentencing policy at U.S.S.G Section 5J1.1; and 3) that the convicted individual was sufficiently rehabilitated as to not endanger the organization they seek to serve.

We turn to these three criteria which are all answered by the abundant evidence of Mr. Gayl's rehabilitation:

- ERISA is a statute designed to protect the flow of interstate commerce and the interests of benefit plan participants and their beneficiaries. Mr. Gayl's employment at Homestead will not jeopardize any of these interests. While the proposed position does involve the processing of benefit plan claims, Mr. Gayl would not have access to or signatory authority over employee benefit plan funds.

- The sentencing policy at U.S.S.G Section 5J1.1, entitled "Relief from Disability Pertaining to Convicted Persons Prohibited from Holding Certain Positions" dictates, in pertinent part, that "relief shall not be given to aid rehabilitation, but may be granted only following a clear demonstration by the convicted person that he or she has been rehabilitated *since commission of the disqualifying crime* and can therefore be trusted not to endanger the organization in the position for which he or she seeks relief

---

[5] *See* https://www.dol.gov/agencies/ebsa/about-ebsa/our-activities/enforcement/oe-manual/prohibited-persons attached as Exhibit J.

      from disability." (emphasis added). Mr. Gayl has made a clear demonstration of rehabilitation in the more than seven years since commission of the underlying offense, including efforts the Court recognized prior to sentencing, additional efforts during his period of incarceration, and the significant gains achieved since his release.

- Mr. Gayl is sufficiently rehabilitated to pose no danger to the organization that seeks to employ him. Although Mr. Gayl does not have prior ERISA experience, he is skilled, honest, diligent, thoughtful and, as a result of his past mistakes, hyper-conscious of the need to avoid risk. He would be supervised by Mr. Green and the company's Founder and Chairman, Thomas J. Knox, a leading healthcare industry expert, who was a candidate for Governor of Pennsylvania in 2010 and ran for Mayor of Philadelphia in 2007. Under this distinguished leadership, without direct control over employee benefit plan funds, and with a proven record of rehabilitation, Mr. Gayl would pose no danger to his employer.

    Mr. Gayl satisfies all the factors set forth for an exemption from the debarment under 29 U.S.C. §1111. Although no relevant case law could be found regarding requests for exemption from ERISA Section 411 debarment, cases discussing the parallel procedures involving exemption from labor union debarment under 29 U.S.C. §504 are illustrative. *See, e.g., Claudio v. United States DOL*, 137 F. Supp. 2d 405 (S.D.N.Y. 2001) (preliminary injunction to restore petitioner to union agent position granted pending outcome of government investigation where petitioner demonstrated he was substantially likely to prove that he was rehabilitated since commission of the underlying offense so as

to not endanger the union or its members. Petitioner was approximately eight years removed from the underlying offense, which though serious (robbery), was not related to union activities; he had turned his life around, was a good husband, father and humble worker; he and the union proactively sought the exemption after the union and he learned of the debarment, and the position for which he sought relief did not involve access to union funds.); *cf. United States v. Martin*, 2009 U.S. Dist. LEXIS 28781, 2009 WL 928631 (D. Minn. 2009) (The sentencing policy at U.S.S.G Section 5J1.1 dictated that petitioner's request for exemption from labor union debarment should be denied without prejudice to re-apply in two years where petitioner, who was convicted of embezzling union funds and obstruction of justice, failed to demonstrate rehabilitation since commission of the offense or to specify details regarding the position for which he sought relief); *Beardsley v. United States Dep't of Labor*, 807 F. Supp. 1192 (W.D. Pa. 1992) (labor union exemption denied as premature for petitioner convicted of narcotics possession, with admitted 20 year history of alcoholism, based on mere six months of rehabilitation). Like the petitioner in *Claudio*, as evidenced by Mr. Gayl's supporting Affidavit, attached character letters and job description, he is worthy of the requested exemption:

- Mr. Gayl has fully reintegrated into society and is a valued worker, family member and citizen.[6]

---

[6] Affidavit at ¶¶ 6, 7, and 10; Affidavit Exhibits "B" and "E".

- Mr. Gayl enjoys the support and trust of his community, including most notably being recently nominated and elected to the Board of Directors at his synagogue.[7]

- Mr. Gayl proved by clear and convincing evidence that he met the high standards required for fitness to practice law, earning reinstatement as a practicing attorney in New Jersey.[8]

- Mr. Gayl is in compliance with all of the terms of his supervised release and has had no further interaction with law enforcement of any kind.[9]

- Mr. Gayl has abstained from gambling, including self-excluding for a minimum term of five years from all gambling facilities in Pennsylvania and New Jersey, and is a leader in his fellowship in helping others abstain from gambling.[10]

- Mr. Gayl's treating neuropsychologist has attested to his mental health rehabilitation.[11]

- Mr. Gayl is qualified for the position, which does not involve access to employee benefit plan funds and where he would serve under distinguished leaders.[12]

Based on his rehabilitation since commission of his underlying offense more than seven years ago, Mr. Gayl has proven that granting the requested exemption will pose

---

[7] Affidavit at ¶ 10; Affidavit Exhibit "E".

[8] Affidavit at ¶ 11; Affidavit Exhibit "F".

[9] Affidavit at ¶¶ 4 and 5.

[10] Affidavit at ¶ 9; Affidavit Exhibit "D".

[11] Affidavit at ¶ 8; Affidavit Exhibit "C".

[12] Affidavit at ¶ 14; Affidavit Exhibit "G".

no danger to any ERISA beneficiary or the organization which he seeks to serve. This exemption will allow Mr. Gayl to use his education, skills and experience to fulfill the hope expressed by this Court at Mr. Gayl's sentencing, that he would "return to where you should have been all along, helping your family, helping your community, and helping your chosen profession." *See* Exhibit B, Sentencing Transcript, at 116.

## IV. CONCLUSION

Mr. Gayl has, by a clear demonstration, been rehabilitated since commission of the disqualifying crime and can therefore be trusted not to endanger the organization in the position for which he seeks relief from disability. Given Mr. Gayl's successful rehabilitation, he respectfully requests that the Court grant his exemption from the ERISA Section 411 debarment pursuant to the statute's relief provisions as codified under 29 U.S.C. § 1111(a).

Respectfully Submitted,

Dated: July 6, 2020

 */s/ Ellen C. Brotman*
Attorney for Defendant, Joshua Gayl
Ellen C. Brotman, Esq., PA Id. # 71775
Brotman Law
One South Broad Street, Suite 1500
Philadelphia, Pennsylvania 19107
(215) 609-3247
ebrotman@ellenbrotmanlaw.com

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| UNITED STATES OF AMERICA | : | Case No. 1:16-cr-00154-NLH |
| --- | --- | --- |
| Plaintiff, | : : : | |
| v. | : : | MOTION FOR RELIEF FROM ERISA SECTION 411 DEBARMENT |
| JOSHUA GAYL | : : : | Judge: Hon. Noel L. Hillman |
| Defendant. | : | |

### **CERTIFICATE OF SERVICE**

I, Ellen C. Brotman, Esquire hereby certify that service of the Defendant's Motion for Relief from ERISA Section 411 Debarment, Supporting Memorandum of Law has been served electronically upon all parties of record by filing in the United States District Court of New Jersey ECF filing system.

Respectfully Submitted,

Dated: July 6, 2020

 */s/ Ellen C. Brotman*
Attorney for Defendant, Joshua Gayl
Ellen C. Brotman, Esq., PA Id. # 71775
Brotman Law
One South Broad Street, Suite 1500
Philadelphia, Pennsylvania 19107
(215) 609-3247
ebrotman@ellenbrotmanlaw.com