UNITED STATES DISTRICT COURT FOR THE
DISTRICT OF NEW JERSEY

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | Case No. 1:16-cr-00154-NLH |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| JOSHUA GAYL, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

**JOINT OPPOSITION TO DEFENDANT JOSHUA GAYL'S
MOTION FOR RELIEF FROM ERISA SECTION 411 DEBARMENT**

The United States Attorney for the District of New Jersey and the Secretary of the United States Department of Labor, through undersigned counsel, respectfully oppose Defendant Joshua Gayl's motion for relief from the debarment provision of Section 411 of the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. § 1111.   Gayl is subject to Section 411's statutory employment disability as a result of his 2016 guilty plea for conspiracy to obstruct justice, contrary to 18 U.S.C. § 1503, in violation of 18 U.S.C. § 371.   His request for relief should be denied because he has not met his burden of clearly demonstrating that he has been rehabilitated to the extent necessary to serve in an otherwise prohibited capacity.

1

## STATEMENT OF FACTS

On March 23, 2016, Gayl pled guilty to an Information that charged him

with conspiracy to obstruct justice, contrary to 18 U.S.C. § 1503, in violation of 18

U.S.C. § 371.   Plea Agreement, ECF No. 5 (Ex. A).   Gayl, the General Counsel

for VO Financial, Inc. (successor to the VO Group) conspired with its president,

Adam Lacerda, and others and

> misled witnesses, tried to improperly influence witnesses, contacted
> witnesses in violation of court-ordered bail conditions, made false
> statements to the court, and presented altered documents to the court
> in response to a trial subpoena, all in an endeavor to obstruct the due
> administration of justice in United States v. Adam Lacerda, et al.

Information ¶ 19, ECF No. 2 (Ex. B).   The criminal case giving rise to Gayl's

conspiracy conviction, United States v. Lacerda, concerned a conspiracy to commit

mail fraud based on actions that the defendants took to defraud customers of the

VO Group.   Id. ¶ 2.   Specifically, the defendants falsely represented to VO Group

customers that the VO Group could pay off timeshare owners' timeshare

"mortgages" or have their timeshares cancelled or sold.   Id. ¶ 5.   Twenty

individuals associated with VO Group or VO Financial, including Gayl, were

convicted or pleaded guilty to felonies.   Gayl read the indictment against Adam

Lacerda and others before he started working at VO Financial.   Id. ¶ 8.

Nonetheless, he agreed to become General Counsel of "a criminal enterprise from

start to finish [that] existed for one reason only and that was to fleece vulnerable

victims of as much money as they possibly could so that the Lacerdas could live a lifestyle of luxury at the expense of hard working people."   Sentencing Tr. 98 (Ex. C).   Gayl proceeded to mislead and improperly influence trial witnesses, contact witnesses in violation of court-ordered bail conditions, make false statements to the Court, and present altered documents to the Court.   Information ¶¶ 6, 19-26.

The Guidelines range for Gayl's offense was 27-33 months' imprisonment. Sentencing Tr. 98.   On July 19, 2017, this Court sentenced Gayl to a significantly below-guidelines sentence of twelve months and one day of imprisonment and a three-year term of supervised release with special conditions including mental health treatment, gambling restrictions and registration on exclusion lists, and occupational restrictions prohibiting employment in the telemarketing and timeshare industries.   Sentencing Tr. 110-14.   At sentencing, the Court described Gayl's offense conduct as "a year long campaign against the FBI, against the U.S. Attorney's Office, and indeed against this Court in its efforts to provide a fair forum for all of the participants, the defendants, the government, the victims, [and] the public . . ."   Sentencing Tr. 104-05.   Gayl "violated court orders, [] revictimized victims, [] sought to get them to change their testimony, or to provide an economic, monetary incentive for them not to come to court, not turn over relevant documents and swear to the truth of the production, all as part of an orchestrated effort to defeat a trial, an investigation, a prosecution and a trial."   Id.

3

106.   Gayl's was the most "vigorous effort at obstruction" that the Court had observed in 25 years as a prosecutor and judge.   Id.

Gayl was imprisoned from August 29, 2017 to June 7, 2018, was furloughed to home confinement on June 7, 2018, and was released from Board of Prisons custody on July 12, 2018.   Def.'s Mem. Support of Mot. Relief ("Relief Mem.") 3, ECF No. 17-1.   His three-year term of supervised release will expire on July 12, 2021.

Gayl has been offered employment as the Associate Director of Claim Watcher Services, a subsidiary of Homestead Smart Health Plans (Homestead). Gayl Aff. ¶¶ 13-14, ECF No. 17-3.   Homestead is a full-service health benefits administrator, and along with its subsidiary, Claim Watcher, provides services to ERISA-covered employee benefit plans.   See id. Ex. G at 27.   Per the job description for this position, Gayl would be responsible for negotiating provider healthcare claims and agreements with healthcare providers, managing Claim Watcher staff, and managing the administrative process regarding payments to providers.   Id.   The position, which is J.D.-preferred, requires at least two years of supervisory experience and project management experience.   Id.   The position also would entail manual adjudication of health benefit claims.   EBSA Report of

Interview (ROI) of Bill Green ¶ 2 (Ex. D).[1]

On July 6, 2020, Gayl filed a Motion for Relief from ERISA Section 411 Debarment, in which he seeks an exemption from the statute's 13-year prohibition on holding certain positions related to employee benefit plans.   Def.'s Mot. Relief, ECF No. 17.   Absent relief, his thirteen-year bar under Section 411 expires July 12, 2031.

## STATUTORY FRAMEWORK

ERISA Section 411 prohibits individuals convicted of certain crimes from serving employee benefit plans in specified capacities for thirteen years from the date of conviction or the end of any imprisonment resulting from such conviction, whichever is later.   29 U.S.C. § 1111(a).   Specifically, a person who has been convicted of one of the listed offenses is prohibited from serving:

> (1) as an administrator, fiduciary, officer, trustee, custodian, counsel, agent, employee, or representative in any capacity of any employee benefit plan,

> (2) as a consultant or adviser to an employee benefit plan, including but not limited to any entity whose activities are in whole or substantial part devoted to providing goods or services to any employee benefit plan, or

---

[1] Upon being informed of Gayl's intention to seek an exemption from the Section 411 bar, the U.S. Department of Labor's Employee Benefits Security Administration ("EBSA") initiated an investigation concerning the appropriateness of granting Gayl's application for exemption. EBSA's investigation has not concluded as of the deadline for this Opposition.   The United States reserves the right to supplement its Opposition with additional facts developed after the filing of this Opposition.

3) in any capacity that involves decision-making authority or custody or control of the moneys, funds, assets, or property of any employee benefit plan. . . .

Id.  Sponsors of Section 411 expressed the view that "[t]he prohibition is considered necessary because of the large funds involved and the attendant great risk of loss affecting a large number of persons."   See S. Rep. No. 93-127, 1974 U.S.C.C.A.N. 4838, 4870.

Congress expressly modeled ERISA Section 411 on Section 504 of the Labor-Management Reporting and Disclosure Act ("LMRDA"), 29 U.S.C. § 504, which bars individuals convicted of certain crimes from serving as union officers. Id.  In 1984, Congress heightened the protections of ERISA Section 411 and LMRDA Section 504 by (1) broadening the list of disqualifying crimes; (2) expanding the debarment period from five to thirteen years; and (3) expanding the list of positions to which the disability applies.   Comprehensive Crime Control Act, Pub. L. No. 98-473, 98 Stat. 1837 (Oct. 12, 1984), Labor Racketeering Amendments, 98 Stat. 2131.

The employment disability in ERISA Section 411 remains in place unless a disqualified individual obtains relief in one of three ways:

(1)     the sentencing court reduces the length of disability for all prohibited capacities to a lesser period, which cannot be less than three years from the date of the judgment of conviction or the end of imprisonment, whichever is later,

(2)     the convicted individual's citizenship rights are fully restored, or

(3)     it is determined by a federal district court that such individual's employment in a particular prohibited position would not be contrary to the purposes of ERISA.

See 29 U.S.C. § 1111(a).[2]   Before granting relief from the disability, the court

must hold a hearing, giving notice to the Secretary of Labor and the prosecuting

officials.   Id.   When, as here, a convicted individual seeks an exemption from the

disability as opposed to a reduction in its length, Section 411 directs that the court

should consider the sentencing guidelines and policy statements issued by the

United States Sentencing Commission pursuant to 28 U.S.C. § 994(a) and should

grant an exemption only if it determines that the individual's service "would not be

contrary to the purposes of" the statute.   Id.

The convicted person bears the burden of clearly demonstrating that he has

been rehabilitated since the time he committed the underlying crime such that he

may be trusted to serve in a capacity otherwise prohibited by Section 411.   See

Local Union 705 Int'l Bhd. of Teamsters v. United States DOL, 2003 U.S. Dist.

LEXIS 21171, at *4 (N.D. Ill. Nov. 21, 2003); Carollo v. Herman, 84 F. Supp. 2d

374, 377 (E.D.N.Y. 2000) (holding applicant for relief from bar imposed by

---

[2]  Gayl does not seek a reduction in the length of his disability, nor could he, because three years have not elapsed since his release from confinement.   He also does not contend that his citizenship rights have been fully restored.

analogous provision LMDRA § 504 "[bore] the burden of persuasion" to clearly

demonstrate rehabilitation and trustworthiness in accordance with U.S.S.G. §

5J1.1).

Pursuant to the United States Sentencing Commission Guidelines Manual,

Policy Statement § 5J1.1, which applies in instances where an individual is

convicted of a crime referred to in ERISA Section 411 or LMRDA Section 504:

> [R]elief shall not be given to aid rehabilitation, but may be granted
> only following a clear demonstration by the convicted person that he
> or she has been rehabilitated since the commission of the
> disqualifying crime and can therefore be trusted not to endanger the
> organization in the position for which he or she seeks relief from
> disability.

U.S.S.G. § 5J1.1.   The burden to clearly demonstrate rehabilitation is difficult to

meet.   E.g., Beardsley v. United States, 807 F. Supp. 1192, 1195 (W.D. Pa. 1992)

(denying relief under U.S.S.G. § 5J1.1 and 29 U.S.C. § 504 to a convicted person

who failed to clearly prove that he was sufficiently rehabilitated despite evidence

of his positive efforts to overcome alcoholism related to offense since his crime).

## **ARGUMENT**

### I.    **Gayl's Conviction Disqualifies Him from Holding the Position Described in his Motion for Relief**

Gayl concedes that his conviction for conspiracy to obstruct justice, contrary

to 18 U.S.C. § 1503, in violation of 18 U.S.C. § 371, subjects him to Section 411's

employment disability.   Relief Mem., ECF No. 17-1 at 1.   See also 29 U.S.C. §

1111 (listing 18 U.S.C. § 1503 as disqualifying crime and extending bar to persons convicted of "conspiracy to commit any such crimes").   And on the basis of facts asserted in his motion for relief, Gayl's employment as Associate Director of Claim Watcher Services would constitute service in a prohibited capacity: as a consultant to an employee benefit plan.   29 U.S.C. § 1111(a)(2).

Section 411 defines "consultant" as "any person who, for compensation, advises, or represents an employee benefit plan or who provides other assistance to such plan, concerning the establishment or operation of such plan."   29 U.S.C. § 1111(c)(2).   Convicted individuals need not be employed directly by the plan to be consultants; rather, they are "prohibited, irrespective of their precise employment status, from receiving compensation for advising or consulting employee benefit plans" while employed by a third party.   United States v. Smith, 698 F. Supp. 589, 594 (E.D. Pa. 1988), aff'd without opinion, 872 F.2d 415 (3d Cir. 1989) (upholding Section 411 conviction of a disqualified individual who had advised employee benefit plans concerning their establishment and operation while being employed and compensated by an insurance carrier retained by the plans).   An individual is prohibited from serving as a consultant to an employee benefit plan whether or not the position involves decision-making authority or custody or control of the moneys, funds, assets, or property of the plan.   See 29 U.S.C. § 1111(a)(2)-(3).

Gayl's prospective employment as the Associate Director for Homestead's

Claim Watcher program meets this definition.   As a health benefits administrator,

Homestead provides operational assistance to employee benefit plans.   At Claim

Watcher, Gayl's duties would include providing services to employee benefit

plans, such as "negotiating provider healthcare claims and agreements with

healthcare providers," "[a]ssist[ing] members with provider bills not authorized by

the applicable health benefit," and manually adjudicating participants' and

beneficiaries' health benefit claims.   Gayl Aff. Ex. G at 27, ECF No. 17-3; EBSA

ROI of Bill Green ¶2.

## II.   Gayl Has Failed to Demonstrate That He Is Sufficiently Rehabilitated to Serve in a Prohibited Capacity

Gayl's motion for an exemption from the Section 411 employment disability

should be denied.   Gayl has not met his heavy burden of demonstrating that he can

be trusted not to endanger the interests of participants and beneficiaries of ERISA

plans if he were to serve in a prohibited capacity.

Gayl cites several rehabilitative efforts that he began pre-sentencing and has

resumed since his release from prison, such as neuropsychological therapy,

attendance at weekly Gamblers Anonymous meetings and abstention from

gambling, and his work as a law clerk.   Relief Mem. 3-4, 11, ECF No. 17-1.   He

also notes that since his release, he has been reinstated as a practicing attorney in

10

the State of New Jersey, and that he was elected to his synagogue's Board of
Directors.   Id. at 5-6.   But these efforts at rehabilitation do not clearly
demonstrate that Gayl can be trusted not to endanger the interests of participants
and beneficiaries in ERISA plans.   See United States v. Cullison, 422 F. Supp. 2d
65, 74-75 (D.D.C. 2006) ("Although the petitioner has engaged in several
important activities since his conviction . . . he has not demonstrated rehabilitation
of a quality and character that suggests to the Court that continuing to enforce
compliance with § 504(a) would be unfairly harsh.") (assessing analogous
provision of LMDRA Section 504).

    First, many of Gayl's cited rehabilitative efforts are merely conditions of his
supervised release.   Gayl notes that he has "returned to treatment with his
neuropsychologist," Relief Mem. 4, ECF No. 17-1, and that he has "abstained from
gambling, including self-excluding for a minimum term of five years from all
gambling facilities in Pennsylvania and New Jersey," id. at 11.   However, the
special conditions of Gayl's supervised release provide that he must "undergo
treatment in a mental health program . . . until discharged by the Court," and that
he "must refrain from all gambling activities" and "register on the self-exclusion
lists maintained by the New Jersey Casino Control Commission and Racetrack
Commission . . . and remain on these lists for the duration of supervision."
Judgment 3-4, ECF No. 11.   Gayl's period of supervised release is still ongoing,

and compliance with the mandatory terms of his sentence does not constitute a clear demonstration of sufficient rehabilitation.

Second, Gayl was released from prison only two years ago.   And while Gayl emphasizes his reinstatement to the New Jersey bar, that reinstatement only occurred a few months ago, on April 23, 2020, and Gayl remains disbarred in Pennsylvania.   Gayl Aff. Ex. F at 24, ECF No. 17-3.   Not enough time has passed for Gayl to demonstrate his trustworthiness, a key consideration under U.S.S.G. § 5J1.1.   Indeed, in permitting a reduction to the length of the disability (as opposed to the exemption Gayl seeks), Section 411 notes that the minimum period must be "at least three years after such conviction or after the end of such imprisonment, whichever is later."   29 U.S.C. § 1111(a).   Gayl has not even reached this three-year mark.   Particularly in light of the short amount of time that has passed since he was released from prison, Gayl's efforts at rehabilitation do not demonstrate that participants and beneficiaries of ERISA plans would be protected if he were to serve in a prohibited capacity.[3]   See, e.g., In re Kellem, 2019 WL 263060, at *3 (M.D. Fl. Jan. 11, 2019) (granting exemption 11 years after defendant's conviction); Claudio v. U.S. Dep't of Labor, 137 F. Supp. 2d 405, 410 (S.D.N.Y. 2001) (granting exemption 8 years after defendant's release from prison).   As

---

[3] The Government is not aware of any court granting an exemption before a defendant's term of supervised release had ended.

U.S.S.G. § 5J1.1 makes clear, relief from employment disabilities "shall not" be granted for the purpose of aiding rehabilitation and enabling a defendant to prove rehabilitation.   Rather, the defendant must demonstrate rehabilitation *before* obtaining relief from the Section 411 employment disability.   Over time, Gayl may be able to provide evidence that he has been sufficiently rehabilitated, but his petition, filed so soon after his release from prison and during his term of supervised release, provides no such evidence.   See United States v. Martin, 2009 WL 928631, at *5 (D. Minn. Apr. 1, 2009) (denying exemption without prejudice to consideration of a renewed petition in two years, where defendant was six years removed from disqualifying conviction and four years removed from release from prison).   Instead, Gayl's motion seems designed more as an aid to his rehabilitation than a demonstration of his completed rehabilitation.   While Gayl may be on the path to rehabilitation, his rehabilitation remains a work in progress.

### III.   The Nature of Gayl's Conviction and the Proposed Position Weigh Against Exemption from Section 411

The character and gravity of Gayl's disqualifying offense also weigh heavily against granting a "rare exception" to the statutory employment disability.   Id. at *3.   In pleading guilty to the Information charging him with conspiracy to obstruct justice, Gayl specifically admitted to misleading witnesses, making payments to witnesses so that they would be more favorably inclined toward the defense at trial,

and lying to the Court.   Information ¶¶ 20-25, ECF No. 2.   In addition to impeding the fair administration of justice, Gayl furthered the victimization of those defrauded by the VO Group's false claims that they could pay off, cancel, or sell their timeshares.   See id. ¶ 5, Sentencing Tr. 98, 105-07 (noting that Gayl's misrepresentations led one victim to pay VO Group $66,000).

Moreover, Gayl's conduct involved significant abuse of his position as an attorney and demonstrated a total lack of judgment.   Gayl knew of the indictment against Adam Lacerda and other VO Group employees before he started working as VO Financial Inc.'s General Counsel.   Information ¶¶ 6-8, ECF No. 2.   Yet despite this plain warning of potential criminal conduct, Gayl not only accepted the job as General Counsel but went on to enthusiastically aid Lacerda and others by impeding the administration of justice.   Id. ¶18.   Gayl's campaign to obstruct justice even included interfering with voir dire by sitting among the jury panel, making derogatory comments about a juror, and writing VO's defense strategy on a legal pad visible to other prospective jurors.   United States v. Lacerda, 2013 WL 4483576, at *13 & n.23 (D.N.J. Aug. 19, 2013).   This misconduct was so flagrant that "[i]t was obvious to a layperson [juror] that the conduct was wrong." Sentencing Tr. 72.

This Court noted at Gayl's sentencing that it had "never seen a more vigorous effort at obstruction," id. at 106, characterizing Gayl's conduct as

14

"essentially a year long campaign against the FBI, against the U.S. Attorney's Office, and indeed against this Court in its efforts to provide a fair forum for all of the participants."   Sentencing Tr. 104-05; see also id. 116 (describing Gayl's "very serious offense supporting an effort to hurt a lot of people . . . .").   In his time as General Counsel of VO Financial, Inc., Gayl helped to "fleece vulnerable victims of as much money as they possibly could so that the Lacerdas could live a lifestyle of luxury at the expense of hard working people."   Sentencing Tr. 98.   If Gayl is employed as Associate Director of Claim Watcher, Gayl would have the discretion to decide whether plan participants' medical expenses would be covered or not.   Individuals who engage in dishonest conduct and flout ethical obligations as Gayl did repeatedly are precisely the individuals Section 411 intended to bar from employment involving employee benefit plans.   See Nass v. Local 348, 503 F. Supp. 217, 220 (E.D.N.Y. 1980) ("[P]laintiff has admitted to engaging in precisely the type of conduct that Congress had decided should preclude him from holding union office.   Although § 504 intrinsically provides for relief from the bar it creates . . . Congress has set forth strict procedures for establishing rehabilitation and trustworthiness.") (assessing analogous provision of LMDRA Section 504); Cullison, 422 F. Supp. 2d at 68 ("The point is that Congress intended to secure high standards of responsibility and ethical conduct in labor organizations by locking out, at least for a period of 13 years after conviction, those people who

15

demonstrate an inability to abide by such standards . . . .") (assessing analogous provision of LMDRA Section 504).   Given Gayl's history of harming vulnerable victims, he has not demonstrated sufficient rehabilitation to warrant an exemption permitting his employment as consultant to an employee benefit plan only two years into a thirteen-year period.   Compare Martin, 2009 WL 928631, at *3 (denying exemption where defendant's "past crimes bear a direct nexus" to breach of a position of trust and abuse of power), with United States v. Lopez, 2019 WL 355518, at *4 (D. Or. Jan. 29, 2019) (past crime of drug trafficking "bears no relation to" union involvement), and United States v. Peters, 938 F. Supp. 2d 296, 301 (N.D.N.Y. 2013) ("Although arson is an enumerated crime under the statute, and is a serious felony, it is not the type of crime that necessarily questions whether he will take advantage of a position of authority.").

The limited and contradictory facts that Gayl has supplied about the prospective position do not support his argument for an exemption.   On the one hand, Gayl diminishes the responsibility and authority associated with the position, stating that the position as Associate Director of Claim Watcher would entail "me potentially working as a law clerk under [CEO Bill Green's] supervision and in other capacities."   Gayl Aff. ¶ 14, ECF No. 17-3.   But the official job description outlines far greater responsibility.   The job description states that Gayl would manage Claim Watcher staff, manage the administrative process regarding

16

payments to providers, and negotiate provider healthcare claims and agreements with healthcare providers.   Id. Ex. G at 27.   The position would also entail manual adjudication of participants' and beneficiaries' health benefit claims; Gayl would have direct access to their protected health information and could manually adjust any claim on his own.   EBSA ROI of Bill Green ¶¶ 2, 5.

Moreover, Gayl has not shown that he will be adequately supervised in the prospective position.   While Gayl asserts that he would work "under [CEO Bill Green's] supervision," Gayl Aff. ¶ 14, ECF No. 17-3, Mr. Green maintains that Gayl would report directly to David Fishbone, currently the Director of Claim Watcher.   EBSA ROI of Bill Green ¶ 5.   Mr. Fishbone confirmed that he—not Green—would supervise and train Gayl in the short term, but also stated that he is in his 70s and plans to retire within a couple of years.   EBSA ROI of David Fishbone ¶ 1 (Ex. E).   While Mr. Fishbone anticipates that Gayl would subsequently report to Mr. Green and Homestead's CFO, TJ Knox, Gayl has offered no evidence that Green and Knox have the capacity to provide the structure and supervision necessary to protect the employee benefit plan.   Green and Knox manage several subsidiaries in addition to Claim Watcher, EBSA ROI of TJ Knox ¶ 1 (Ex. F); EBSA ROI of Bill Green ¶ 1, and upon Mr. Fishbone's retirement, it appears that Gayl will be the most senior employee of Claim Watcher, EBSA ROI of David Fishbone ¶ 1.

17

The degree of authority and discretion that Gayl would have as Associate Director counsels in favor of denying his petition for exemption, particularly given the circumstances surrounding his conviction.   At sentencing, the absence of a strong and clear structure and supervision at VO Financial was cited as a factor contributing to his obstruction campaign.   At sentencing, Gayl's counsel referenced his "inexperience" and noted that in the job Gayl held after he left VO Financial, Gayl benefited from "much needed senior guidance."   Sentencing Tr. 40.   Gayl's counsel also spoke of Gayl's "desperate[]" need for "senior people vetting everything that he did."   Id. 40   This Court noted that Gayl is "someone who actually had difficulty functioning outside of a highly structured environment where he would receive and benefit from wise counsel . . . ." Sentencing Tr. 103-04.   This need for structure and guidance is compounded by what the Court described as Defendant's "unhealthy tolerance for risk."   Sentencing Tr. 99.

Gayl's employment as a law clerk and recent reinstatement to the New Jersey bar do not show that he is now ready for the authority and discretion inherent in a managerial position that deals with ERISA-covered employee benefit plans' healthcare claims and payments.   If anything, Gayl's reinstatement weighs against granting an exemption.   He can seek employment as a lawyer at a law firm—a job for which he is trained and where he can receive the active supervision and structure that will protect against future misconduct—rather than a job created

18

for him by a friend for which he has no experience.   EBSA ROI of TJ Knox ¶ 3;

EBSA ROI of Joshua Gayl ¶ 3 (Ex. G).   Simply put, neither Gayl's employment

history nor his other rehabilitative efforts prove that he has been sufficiently

rehabilitated or that he currently possesses the trustworthiness required to work

with ERISA plans.

Gayl knew that there would be collateral consequences for the "most

vigorous effort at obstruction" the Court had seen in 25 years.   In fact, his counsel

stressed these consequences when arguing for a lenient sentence.   See Sentencing

Tr. 39-40; Acceptance of responsibility statement of Ellen C. Brotman, PSR ¶ 76

(acknowledging that Gayl "has, and will continue to, suffer financial and

professional consequences for many years to come").   Gayl received a prison

sentence that was less than half of the bottom end of the Guidelines range in part

because Gayl had suffered and would suffer "collateral consequences."

Sentencing Tr. 102-03.   Those collateral consequences are important and serve to

deter Gayl from committing future crimes.   Id. 110 (finding that "the collateral

consequences that [Gayl] and other members of his family will suffer will be a

strong deterrent to any future criminal conduct").   One of those collateral

consequences—ERISA Section 411's bar on certain types of employment for a

period of thirteen years after a defendant's release from prison—is in place to

protect employee benefit plans.   Gayl has not satisfied his burden to clearly show that the Court should lift the bar after only two years.

## **CONCLUSION**

For the reasons above, Gayl's request for relief should be denied.

Respectfully Submitted,

CRAIG CARPENITO                         KATE O'SCANNLAIN
United States Attorney                   Solicitor of Labor

*/s/ Daniel A. Friedman*                 G. WILLIAM SCOTT
By:    DANIEL A. FRIEDMAN                 Associate Solicitor
Assistant U.S. Attorney                  Plan Benefits Security Division

                                         WAYNE R. BERRY
                                         Counsel
                                         Plan Benefits Security Division

                                         BLAIR L. BYRUM
                                         Attorney
                                         Plan Benefits Security Division
                                         U.S. Department of Labor

## <u>CERTIFICATE OF SERVICE</u>

The undersigned certifies that on this day I caused to be served, via the Court's

Electronic Filing System, a copy of the Joint Opposition to Defendant Joshua Gayl's

Motion for Relief from ERISA Section 411 Debarment, on Ellen C. Brotman, Esq.


                                          CRAIG CARPENITO
                                          United States Attorney

                                          */s/ Daniel A. Friedman*
                                          DANIEL A. FRIEDMAN
                                          Assistant U.S. Attorney

Dated:          September 4, 2020
                Camden, New Jersey