

**U.S. Department of Justice**
*United States Attorney*
*District of New Jersey*

| | |
|---|---|
| CRAIG CARPENITO<br>United States Attorney | 401 Market Street, Fourth Floor<br>Camden, New Jersey 08101-2098 |
| DANIEL A. FRIEDMAN<br>Assistant United States Attorney | Direct Dial: 856.968.4867<br>Email: Daniel.friedman2@usdoj.gov |

October 21, 2020

Honorable Noel L. Hillman
United States District Judge
Mitchell H. Cohen Federal Courthouse
Camden, New Jersey 08101

      Re:    <u>United States v. Joshua Gayl</u>, Crim. No. 16-154 (NLH)

Dear Judge Hillman:

      The Government submits this letter brief following the October 7, 2020 hearing on Defendant Joshua Gayl's motion for relief from ERISA Section 411 debarment.  Because Gayl has not met his burden of clearly demonstrating that his employment as Associate Director of Claim Watcher would comport with the purposes of ERISA, his motion should be denied.

      When considering whether a criminal defendant "has been rehabilitated since commission of the disqualifying crime and can therefore be trusted not to endanger the organization in the position for which he seeks relief from disability," U.S.S.G. § 5J1.1, courts generally analyze the following three factors: (i) the character and gravity of the offense and its nexus to serving in a position of responsibility; (ii) the nature of the position sought; and (iii) the extent that the defendant is rehabilitated so as to adhere to the highest standards of responsibility and ethical conduct under ERISA.  <u>See</u> <u>United States v. Tolbert</u>, 2019 WL 7372659, at * 2 (D.D.C. Dec. 31, 2019).  These factors, which were thoroughly examined at the October 7 hearing and in a U.S. Department of Labor (DOL) investigation, demonstrate that an exemption should not be granted in this case.[1]

<b>Gayl's concerted campaign of obstruction</b>

      The last time Gayl was employed in a position of authority, he engaged in "a year long campaign against the FBI, against the U.S. Attorney's Office, and indeed against this Court in its efforts to provide a fair forum for all of the participants, the defendants, the government, the victims, [and] the public . . ." Sentencing Tr. (Dkt. 22-3) 104:23-105:2.  His offense was the most "vigorous effort at obstruction" that the Court had observed in 25 years as a prosecutor and judge.  <u>Id.</u> 106:13-16.  As general counsel of VO

---

[1] The Government relies on the plea agreement, Information, and sentencing transcript (Dkt. 22-1 – 22-3); reports of interview from the DOL investigation (Dkt. 22-4 – 22-7); and the testimony during the October 7, 2020 hearing.  Additional DOL reports of interview were provided to the Court before the hearing but were not previously filed on the docket.  Along with the Oct. 7 hearing transcript, they are being filed as exhibits to this letter brief.

Financial, Inc., a company that purported to offer relief to timeshare owners, Gayl "misled witnesses, tried to improperly influence witnesses, contacted witnesses in violation of court-ordered bail conditions, made false statements to the court, and presented altered documents to the court in response to a trial subpoena." Information (Dkt. 22-2) ¶ 19.   At jury selection in the trial of VO's principals, Gayl sat amongst the jury panel without identifying himself as associated with the defense, "made derogatory comments about a presumptive juror already in the jury box loudly enough for other jurors to hear, listed jurors juror numbers on a legal pad and put a large 'X' through them plainly enough for a prospective juror to see, and by his own admission wrote out VOs defense strategy on the same legal pad." United States v. Lacerda, 2013 WL 4483576, at *13 n.23 (D.N.J. Aug. 19, 2013). Unless Gayl had taken these actions while employed by an employee benefit plan, it is difficult to imagine criminal conduct that would more strongly implicate Congress' concerns in enacting ERISA:  "protect[ing] participants in employee benefit plans." Matinchek v. John Alden Life Ins. Co., 93 F.3d 96, 101 n.2 (3d Cir. 1996); compare United States v. Peters, 938 F. Supp. 2d 296, 301 (N.D.N.Y. 2013) ("Although arson is an enumerated crime under [the union counterpart to ERISA Section 411], and is a serious felony, it is not the type of crime that necessarily questions whether he will take advantage of a position of authority.").

### The proposed position is unstructured and lacks adequate supervision

Claim Watcher audits and reprices claims for self-funded employer health insurance plans, Oct. 7 Tr. (Ex. K) 18:6-8, and assists individuals who receive balance bills from hospitals. Id. 18:17-19:3. As Associate Director, Gayl would be responsible for recommending and implementing improvements to the auditing and repricing program; managing Claim Watcher staff members; managing the process regarding payment to providers; managing the balance billing process; among other responsibilities.  Job Description (Dkt. 17-3, Ex. H).  Gayl is unqualified for the position.  He has spent his entire professional career as a journalist, lawyer, or law clerk and has no experience or training in the core functions of Claim Watcher. Oct. 7 Tr. 39:15-18; 41:14-19; 44:8-11; 45:7-8; 47:9-11; 134:13-136:17.

Beyond Gayl's lack of experience, employment in a position without sufficient structure and supervision risks harming the 18,000 – 20,000 individuals who are covered by benefit plans serviced by Claim Watcher.  Oct. 7 Tr. 36:23-25.  Gayl, his counsel, and the Court have acknowledged that VO's lack of structure and supervision facilitated Gayl's obstruction campaign.  Sentencing Tr. (Dkt. 22-3) 40 (describing Gayl's "desperate[]" need for "senior people vetting everything that he did"); 103-04 (noting that Gayl is "someone who actually had difficulty functioning outside of a highly structured environment where he would receive and benefit from wise counsel…"); October 7 Tr. 154:6-155:1 (Gayl acknowledging that a lack of structure and supervision contributed to his offense).  Gayl's apparent success in his post-VO employment positions confirms that structure and close supervision are critical to his success and to the protection of his employers' clients.  At AmerisourceBergen, Gayl was part of the litigation and compliance teams at a large, established company and was supervised by the company's Group General Counsel and Compliance Counsel.  Oct. 7 Tr. 158:8-22; Report of Interview of Mary Fox (Ex. I).  As a law clerk for Silvers, Langsam & Weitzman, P.C., Gayl is "given discrete requests to perform certain types of work that tend to be of the administrative nature."  October 7 Tr. 89:1-21.  He reports the completed tasks to his supervisor and checks in with his supervisor multiple times a day. Id. 81:4-7.  "He does not operate independently." Id. 89:16.

The Associate Director position, in sharp contrast, is unstructured and largely unsupervised. Gayl's responsibilities are so ill-defined and rapidly evolving that Gayl was unable to articulate what he would actually do if employed. Id. 137:19-139:1; 29:3-4; 50:12-21.  Despite his lack of experience, Gayl would be in a position of authority over other Claim Watcher employees. Id. 21:10-12; 24:13-14; 49:21-24.  Gayl himself would not be closely supervised.  While Bill Green would be Gayl's nominal

supervisor, Green, who is CEO of not just Claim Watcher but also the third-party administrator associated with Claim Watcher, is "very busy doing other things" and plans to observe only one day of Gayl's training. Id. 51:3-20. Green described Claim Watcher as "extraordinarily entrepreneurial" and "very flat, which "we think that that's the better way to be than, okay, you report to who, you report to who." Id. 49:15-21. This unstructured setting may work well for some employees, and for Claim Watcher, but it is not the type of work environment where Gayl has demonstrated restraint and trustworthiness.

### Gayl's rehabilitation is incomplete and does not establish that he will adhere to the high standards required of ERISA consultants and employees.

While Gayl has complied with his supervised release conditions and professes remorse, his unwillingness to fully accept responsibility for his criminal conduct undermines his argument that plan participants will be protected if Gayl is permitted to work as Claim Watcher's Associate Director.

Gayl did not fully inform either his post-VO employers or his proposed employer about the details of his criminal conduct. Id. 58:15-60:11; 100:13-16; 101:22-102:20; Fox Interview (Ex. I). At the October 7 hearing, Gayl would not accept full responsibility for his criminal conduct. 145:25-146:15 (refusing to admit attempting to influence the jury pool); 147:5-148:1 (refusing to admit that he knew the statements he asked potential witnesses to sign were false). Most troubling, Gayl was unable or unwilling to acknowledge that his criminal conduct victimized hundreds of vulnerable victims. Even now, more than 7 years after his obstruction campaign, Gayl still believes that his actions helped the victims because he was offering them refunds in exchange for releases. He views his actions as a "win-win" for the victims and the Lacerdas. Id. 150:11-151:18. Gayl's inability to comprehend the coercive and destructive nature of withholding refunds for victims who refused to sign releases that would benefit the Lacerdas and harm efforts to hold the perpetrators of the scheme accountable is disqualifying. He has not shown that he would adequately respect and protect insurance plan participants when, for example, they are faced with potentially financially ruinous balance bills for hospital visits.

### Conclusion

Unlike health plans provided by conventional insurance companies, self-insured plans like those serviced by Claim Watcher are not regulated by states, are not required to maintain minimum reserves, and are not required to contribute to state guarantee funds. Id. 33:5-35:7. For these plans, ERISA is critical to protecting plans and plan participants. Because DOL lacks the resources to directly and thoroughly monitor self-insured health plans, it relies on Section 411 as a gatekeeper to restrict individuals with certain criminal convictions from serving as employees or consultants to the plans. Gayl has not demonstrated that, given the nature and gravity of his offense, the nature of the proposed position, and the extent of Gayl's rehabilitation, the 18,000+ individuals covered by health plans serviced by Claim Watcher would be adequately protected were Gayl to assume the position of Associate Director. This case is not one of the "rare occasions where a thirteen year ban might be considered too harsh." United States v. Peters, 938 F. Supp. 2d 296, 298 (N.D.N.Y. 2013).[2]

---

[2] Notwithstanding his recent reinstatement to the New Jersey bar and demonstrated track record working in law firms with clear hierarchies and structures, Gayl has not sought employment as a lawyer at a law firm because he prefers not to "commute to New Jersey." Id. 126:1-2; 159:13-15; 160:17; 161:5-6. Accordingly, there is "no evidence that continuing to subject him to the statutory employment disqualification would be unfairly harsh because he is unemployable in any other field." United States v. Cullison, 422 F. Supp. 2d 65, 73 (D.D.C. 2006).

Respectfully Submitted,

CRAIG CARPENITO
United States Attorney

*/s/ Daniel A. Friedman*
By:     DANIEL A. FRIEDMAN
Assistant U.S. Attorney

KATE O'SCANNLAIN
Solicitor of Labor

G. WILLIAM SCOTT
Associate Solicitor
Plan Benefits Security Division

WAYNE R. BERRY
Counsel
Plan Benefits Security Division

BLAIR L. BYRUM
Attorney
Plan Benefits Security Division
U.S. Department of Labor